UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SHANE DOUGLAS BELL, | 4:24-CV-04068-LLP |
| Plaintiff, | |
| vs. | 1915A SCREENING ORDER |
| KELLY TJEERDSMA, Unit Coordinator at Mike Durfee State Prison, in individual and official capacity; BRIAN FOLEY, Cultural Activities Coordinator at Mike Durfee State Prison, in individual and official capacity; KELLIE WASKO, Secretary of Corrections, in individual and official capacity; ALEJANDRO REYES, Associate Warden/Acting Warden at Mike Durfee State Prison, in individual and official capacity; TAMMY MERTENS-JONES, Cultural Activities Coordinator, Jameson Annex, in individual and official capacity; TAMMY DOYLE, Administrative Grievance Coordinator at Mike Durfee State Prison, in individual and official capacity; TERESA BITTINGER, Warden at Jameson Annex, in individual and official capacity; CORRECTIONAL OFFICE AROP, White shirted correctional officer at Jameson Annex, in individual and official capacity; JANE DOE NURSE #1, Nurse, in individual and official capacity; JANE DOE NURSE #2, Nurse, in individual and official capacity; JOHN DOE OFFICER #1, Correctional Officer on A-Floor in Jameson Annex, in individual and official capacity; JOHN DOE OFFICER #2, Correctional Officer on A-Floor in Jameson Annex, in individual and official capacity; TIM SCHNEIDER, Unit Manager on B-Floor of Jameson Annex, in individual and official capacity; BRITTANY SHELBURG, Case Manager at Mike Durfee State Prison, in individual and official capacity; DANIEL SESTAK, Unit Manager at Mike Durfee State Prison, in individual and official capacity; CHARISSA WAREMBOURG, | |

| | |
|---|---|
| Corporal Correctional officer, in individual and official Capacity; and AMBER PIRRAGLIA, Director of Prisons, in individual and official capacity, | |
| Defendants. | |

Plaintiff, Shane Douglas Bell, an inmate at the Mike Durfee State Prison (MDSP), filed a pro se lawsuit under 42 U.S.C. § 1983 and other federal civil rights statutes. Doc. 1. He filed an amended complaint, Doc. 7, and a motion to appoint counsel, Doc. 3. Bell paid his full civil complaint filing fee.

## 1915A SCREENING

Bell filed an amended complaint. Doc. 7. He amended his complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1). *See also Bell v. Young*, 4:21-CV-04134-LLP, 2024 WL 4182575, at *5 (D.S.D. Sept. 13, 2024) (granting Bell leave to amend his complaint in 4:24-CV-04068-LLP to allege any breach of settlement claims not already alleged in his complaint). "[A]n amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Thus, Bell's amended complaint superseded his original complaint, and this Court screens his amended complaint under 28 U.S.C. § 1915A.

### I.    Factual Background as Alleged by Bell

Bell sues MDSP Unit Sergeant Kelly Tjeerdsma, MDSP Cultural Activities Coordinator Brian Foley, South Dakota Department of Corrections (DOC) Secretary of Corrections Kellie Wasko, MDSP Warden Alejandro Reyes, South Dakota State Penitentiary (SDSP) Jameson Annex Cultural Activities Coordinator Tammy Mertens-Jones, MDSP Administrative Grievance Coordinator Tammy Doyle, SDSP Jameson Annex Warden Teresa Bittinger, SDSP Jameson

2

Annex Correctional Officer Arop, SDSP Jameson Annex Nurse Jane Doe #1, SDSP Jameson

Annex Nurse Jane Doe #2, SDSP Jameson Annex Correctional Officer John Doe #1, SDSP

Jameson Annex Correctional Officer John Doe #2, SDSP Jameson Annex Unit Captain Tim

Schneider, MDSP Case Manager Brittany Shelburg, MDSP Unit Captain Daniel Sestak, MDSP

Corporal Correctional Officer Charissa Warembourg, and DOC Director of Prisons Amber

Pirraglia. Doc. 7 at 1–6.

### A.    Religion

Bell was a leader of the Springfield Buddhist Group (the "Group") at MDSP. *Id.* at 8, 10.

On March 4, 2024, Bell asked Foley to make copies of religious papers for the Group, which

Bell sought to use to teach and learn Buddhist practices and studies. *Id.* He requested copies of

chants, meditation instructions, the Five Precepts, the Three Refugees, and service practices. *Id*

Foley refused to make any copies for the Group, as instructed by Mertens-Jones and Reyes. *Id.* at

8, 10, 17. Bell also asked Tjeerdsma, Shelburg, and Sestak, who also refused. *Id* at 8, 10. On

March 23 and 24, 2024, Bell discussed the refusal to provide copies with Reyes, who told Bell

that he did not think the action violated his First Amendment rights. *Id.* at 8. Wasko made and

enforced policies and practices relating to religious copies. *Id.* at 8, 10. Wasko, Mertens-Jones,

and Sestak allowed the alleged constitutional violations to continue. *Id.* at 8. Bell filed an

administrative remedy request about Defendants' actions, but Doyle "rejected the administrative

remedy #49301 without properly addressing unconstitutional actions." *Id* ; *see also id.* at 10. Bell

claims that Defendants' actions violated his rights under the First and Ninth Amendments and

the Religious Land Use and Institutionalized Persons Act (RLUIPA) because they substantially

burdened his religious beliefs and practices, affected his ability to facilitate Group services,

3

caused him mental anguish and anxiety, and slandered his name by calling him a "Buddha Rat." *Id.* at 8, 10.

### B.    Legal Papers

On February 23, 2024, Tjeerdsma refused to make legal copies and send out as privileged legal mail Bell's request for commutation of sentence to then-Governor Kristi Noem. *Id* at 9, 11. Tjeerdsma and Sestak told Bell that Reyes directed that only legal paperwork could be copied and sent, and Tjeerdsma did not think that his request to the governor was legal paperwork because it was not a commutation packet. *Id.* Tjeerdsma, Shelburg, Sestak, and Reyes would not allow Bell to send his request for commutation, despite Tjeerdsma and Shelburg sending requests for other inmates. *Id.* at 9, 11–12, 15–17. Wasko and Reyes allowed the refusal to occur "despite it clearly violating prison policy #1.7.D.03, policy 500-06 and the Constitution." *Id.* at 9; *see also id.* at 11, 15. On March 23 and 24, 2024, Bell talked with Reyes about sending his request. *Id* at 9. Reyes did nothing to stop the Defendants' actions, and Bell was still unable to mail his request for commutation of sentence to the governor at the time he filed his amended complaint. *Id* Bell filed a grievance, but Doyle rejected it and did not mail his commutation request. *Id.* at 9, 11, 15. Bell claims that Defendants' actions violated his rights under the First and Fourteenth Amendments. *Id* Defendants' actions caused Bell mental anguish, depression, sleeplessness, anxiety, headaches, and hopelessness. *Id.* at 9.

### C.    Books

In a prior case, Bell and employees of the DOC and SDSP entered into a settlement agreement, which contained a provision about books donated to inmates at DOC facilities. *Id* at 19. On September 30, 2024, Warembourg rejected two books that were donated from Left Bank

Books as part of a Books to Prisoners program.[1] *Id* at 19, 21, 23. Wasko, Pirraglia, and Reyes allowed the breach to occur because they are responsible for ensuring that prison employees abide by the policies and settlement agreement. *Id* at 19.

On October 1, 2024, Warembourg rejected a store catalogue containing Buddhist religious items and three books—*The Still Point*, *The Monastery Store*, and *The Undivided Life*—donated by the National Buddhist Prison Sangha of the Zen Mountain Monastery. *Id* at 20–23. The envelope containing Buddhist materials was marked "Religious Materials." *Id* at 20. Bell showed Foley the rejection paperwork, but Foley did not return the materials to Bell. *Id.* at 20, 22–23. Bell claims that Wasko, Pirraglia, and Reyes knowingly and willingly allowed the breach of contract and did so to retaliate against him. *Id.* at 17, 20–23. Bell claims that Wasko changed prison policies and practices to allow rejection of Buddhist materials. *Id.* at 22–23.

### D.    Retaliation

In two prior cases, Bell as well as DOC and SDSP employees entered settlement agreements, which contained provisions prohibiting retaliation. *Id.* at 15, 17, 21, 23. Bell claims that Schneider, Wasko, and Bittinger breached the contract and retaliated against him by housing him with an inmate known to suffer from mental illness. *Id* at 12, 14–15, 17. Bell had an altercation with his cellmate, which resulted in Bell being sent to the Segregated Housing Unit (SHU) for a week without receiving a writeup. *Id* at 12, 17, 24. As a result of being put in the SHU, Bell lost a week work of pay at his prison job, which totaled $540. *Id.* at 17. An unknown officer broke Bell's electric typewriter and accessories while packing up Bell's property when he was sent to the SHU. *Id.* at 12, 14, 17. Bell claims that Wasko, Bittinger, and Pirraglia allowed

---

[1] Bell claims that Pirraglia lied in an affidavit signed September 19, 2024, "because IN PRACTICE books from Books to Prisoner programs are actually being rejected." Doc. 7 at 19. However, Bell does not claim that books were rejected until September 30, 2024. *Id.*

the retaliation to occur because they do not hold their subordinates accountable. *Id.* at 14. Bell claims that Warembourg, Wasko, Pirraglia, Reyes, and Foley retaliated against him because of his prior lawsuits, grievances, religious practices, and other protected activity, and because he is a jailhouse lawyer. *Id.* at 23.

### E.    Asthma Attack

On October 5, 2023, Bell was taken to the SHU. *Id* at 13. While in the SHU, Bell had an asthma attack, and an officer provided his inhaler for use at 4:30 a.m. *Id.* at 13–14. Bell continued to have asthma attacks, but Arop, Jane Doe Nurses #1 and #2, and John Doe Officers #1 and #2 did not give Bell his inhaler for eighteen hours. *Id.* at 12–15, 17. Jane Doe Nurses #1 and #2 saw Bell in distress, but they stated that Bell did not have an order for an inhaler or said that they did not have an inhaler for him. *Id* at 13–14. Bell pushed the emergency call button, and John Doe Officers #1 and #2 told him they did not have an inhaler. *Id.* John Doe Officer #1 told Bell to not push the call button and stopped responding to Bell's call button. *Id.* at 13. Arop talked with Bell at his cell and told Bell that he would get Bell's prescription glasses and inhaler, but Arop never returned. *Id.* at 13–14. Due to Defendants' actions, Bell had difficulty breathing; experienced a panic attack, anxiety, mental and physical pain and suffering, sleeplessness, and headaches; and fell and hit his head, causing him to miss a week of work at his prison job. *Id*

### F.    Grievances

Bell filed grievances alleging violations of his constitutional rights, and Doyle denied the grievances without allowing the grievances to go to higher prison officials. *Id.* at 16. Bell claims that his grievances related to violations of his settlement agreements and other legitimate concerns, but Doyle denied the grievances "for any reason to prevent grievances proceeding further." *Id.* Bell alleges that Wasko created a system and a rejection form to prevent grievances

from being appealed to her. *Id.* Bell claims that the system allows legitimate grievances to be ignored, rejected, and stopped in violation of his right to due process. *Id.*

### G.    Property

When Bell was incarcerated at the SDSP Jameson Annex, he purchased two padlocks from commissary for a total of $21.58. *Id.* at 18. When Bell was transferred to the MDSP, he was told that padlocks were not allowed under prison rules, and his padlocks were taken. *Id.* Wasko, Pirraglia, and Reyes enforced the MDSP's rule without providing him reimbursement for the padlocks. *Id.* He claims that Defendants' actions violated his right to due process. *Id.*

### H.    Tax Return

When Bell was incarcerated at the Jameson Annex, he worked at Metal Craft Industries. *Id.* at 27. Staff at the Jameson Annex provided Bell with forms to file his federal income tax return. *Id.* Bell was transferred to the MDSP, and staff at the MDSP refused to provide him with tax forms. *Id.* Bell filed an informal resolution request, and Sestak responded that "[w]e don't provide forms or assist offenders as this is their responsibility if filing. The IRS does not send out forms so offenders can write them." *Id.* Bell filed an administrative remedy request, and Reyes responded, "The DOC is not required to provide tax documents to offenders." *Id.* Bell claims that Wasko and Pirraglia should make tax forms available at MDSP. *Id.*

### I.    Conspiracy

Bell alleges that all Defendants conspired to violate his rights under the First, Eight, Ninth, and Fourteenth Amendments and under his settlement agreements. *Id.* at 25–26. Bell claims that Tjeerdsma, Shelburg, Sestak, Mertens-Jones, Reyes, Foley, Wasko, Pirraglia, Doyle, and Warembourg conspired to retaliate against him because he exercised his civil rights, filed grievances and lawsuits, and engaged in other protected activity. *Id.* at 24–26. He alleges that

7

they conspired by refusing to allow his request for commutation of sentence to be sent to the governor, refusing to make paper copies of religious material, rejecting grievances without properly investigating them, rejecting donated books and religious materials, refusing to allow him to gather affidavits from prisoners, and slandering his name and reputation among employees and inmates. *Id.* Bell alleges that Bittinger, Arop, Schneider, Jane Doe Nurses #1 and #2, and John Doe Officers #1 and #2 conspired to retaliate against him for exercising his civil rights and filing grievances. *Id.* He claims that they conspired by destroying his electronic typewriter and accessories, putting an inmate suffering from mental illness in his cell, placing him in the SHU without his inhaler, losing a week of pay by being placed in the SHU, causing pain, and slandering his name and reputation with employees and inmates. *Id*

### J.    Claims and Requested Relief

Bell sues all Defendants in their individual and official capacities. *Id* at 2–6. Bell alleges breach of settlement agreement contract claims and claims for violation of his rights under the First, Eight, Ninth, and Fourteenth Amendments and RLUIPA, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. *Id* at 8–27.

Bell seeks the following money damages: (1) $540 in compensatory damages for a week of lost wages when he was in the SHU; (2) $209.60 for the cost of typewriter accessories that were destroyed by DOC staff; (3) nominal damages of $1.00; (4) compensatory damages of $5,000 from each Defendant for pain and suffering, emotional anguish, mental anguish, psychological anguish, and distress; (5) punitive damages of $10,000 from each Defendant or whatever the Court deems just to deter future violations of his constitutional rights and settlement agreement contracts; (6) any other punitive damages that the Court deems appropriate to deter retaliation and unlawful adverse effects; and (7) $5,000 from each Defendant for

conspiracy. *Id.* at 28, 36. Bell seeks declaratory relief. *Id.* at 29. He requests a written apology from each Defendant. *Id* at 29–30. He also asks that a public news conference be held so Defendants can verbally admit that they violated his constitutional rights and settlement agreements as well as declare that they will not retaliate against him. *Id*

Bell requests the following injunctive relief: (1) terminate all Defendants; (2) place Swintec typewriter ribbons on commissary; (3) provide him rejected books titled *Battles of the Crimean War*, *To End All Wars*, *The Still Point*, *The Monastery Store*, and *The Undivided Life*; (4) allow books and materials sent from prison programs and religious organizations, stores, and monasteries to be given to Bell; (5) require DOC to abide by the donated books clause in his settlement agreement; (6) prohibit unlawful adverse effects or retaliation as agreed to in the settlement agreement; (7) permit Bell to send his commutation of sentence request as privileged legal mail to the governor in accordance with policy 500-06; (8) change policies to allow religious groups to have paper copies of materials at no cost and other documents to be made available at a cost of $.05 per page; (9) require an independent ombudsman to be at the prison to monitor compliance with settlement agreement contracts and enforcement with federal rights and have the Court take a hands-on approach to enforce settlement agreements; (10) return to or reimburse for two combination locks and provide a written explanation of why Bell cannot have padlocks; (11) replace or reimburse for any of Bell's property that was lost or destroyed during prison staff packing up his property; (12) prevent him from being housed with inmates who suffer from mental illness or any other inmate for retaliation purposes; (13) house Bell in a single dorm for the remainder of his sentence; (14) inform the ombudsman and the Court whenever Bell is moved or when any possible retaliation or unlawful adverse effects occur; (15) require a third Buddhist holiday on February 15 for Parinirvana Day and allow outside guests to attend

holiday meals; (16) require Defendants to pay for next three holiday meals; (17) require that

RLUIPA be enforced and monitored by independent monitor; (18) implement and enforce the

United Nations Standard Minimum Rules for Treatment of Prisoners; (19) require that Bell serve

the remainder of his time in South Dakota and prevent him from being sent out of state in

retaliation; (20) change prison policy to require staff to sign an acknowledgement of receipt of

informal resolution and administrative remedy request or appeal and provide inmate with free

copy of grievance; and (21) allow Buddhist religious materials to be purchased from the

Monastery Store. *Id.* at 30–36.

## II.    Legal Background

The court must assume as true all facts well pleaded in the complaint. *Est of Rosenberg*

*v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally

construed. *Erickson v Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc* ,

354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se

complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d

1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x

502, 504 (8th Cir. 2013) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do[.]" *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does

not contain these bare essentials, dismissal is appropriate. *See Beavers v Lockhart*, 755 F.2d 657,

663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to

raise a right to relief above the speculative level on the assumption that all of the allegations in

the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v*

*Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The Court will now assess each individual claim under 28 U.S.C. § 1915A.

## III.    Discussion

### A.    Official Capacity Claims for Money Damages

Bell sues all Defendants in their individual and official capacities. Doc. 7 at 2–6. At the time of the alleged events, all Defendants were employees of the State of South Dakota. The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich Dep't of State Police*, 491 U.S. 58, (1989) (citing *Brandon v Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id* Here, Bell seeks monetary damages against all Defendants. Doc. 7 at 28, 36. Claims against Defendants employed by the State of South Dakota in their official capacities are the equivalent of claims for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign

11

immunity. Thus, Bell's claims against all Defendants in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915A(b)(2).

**B.     Claims for Injunctive and Declaratory Relief Against SDSP Employees**

Bell sues Bittinger, Arop, Nurse Jane Doe #1, Nurse Jane Doe #2, John Doe Officer #1, John Doe Officer #2, and Schneider, who he claims are employees of the SDSP.[2] Doc. 7 at 3–5. Bell is no longer incarcerated at the SDSP. *Id.* at 1. The Eighth Circuit held that "an inmate's claims for declaratory and injunctive relief are moot when he is transferred to another facility and is no longer subject to alleged unlawful conditions." *Gladson v Iowa Dep't of Corr*, 551 F.3d 825, 835 (8th Cir. 2009) (citing *Pratt v Corr Corp. of Am*, 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)); *see also Smith v Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (finding that an inmate's transfer to a new facility weeks before a trial for violation of his First Amendment rights mooted his claims for injunctive relief); *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978) (holding that a prisoner's claims for injunctive relief for violation of his Fourteenth Amendment rights were moot when plaintiff was transferred to a different penitentiary). Thus, Bell's claims for injunctive and declaratory relief against Bittinger,[3] Arop, Nurse Jane Doe #1, Nurse Jane Doe #2, John Doe Officer #1, John Doe Officer #2, and Schneider are dismissed without prejudice as moot under 28 U.S.C. § 1915A(b)(1).

---

[2] Bell also sues Mertens-Jones who is employed by the SDSP. Doc. 7 at 3. The Eighth Circuit has held that a plaintiff's claims for injunctive relief were not moot against a defendant, such as an employee of the state department of corrections, who still has control over the plaintiff and the ability to conduct future wrongs and constitutional violations against the plaintiff after the plaintiff's transfer. *Randolph v Rodgers*, 170 F.3d 850, 856–57 (8th Cir. 1999). Because Mertens-Jones dictates religious activity decisions to Foley, Bell appears to allege that Mertens-Jones still has control over him. Doc. 7 at 3. Thus, this Court will separately analyze Bell's official capacity claims for injunctive relief against Mertens-Jones.

[3] Bittinger is no longer the Warden at the SDSP. All official capacity claims against her have been dismissed. Thus, this Court need not substitute Bittinger's successor on the official capacity claims under Federal Rule of Civil Procedure 25(d) because it would be futile.

C.    **Individual Capacity Claims for Money Damages and Official Capacity Claims for Injunctive and Declaratory Relief**

"Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official capacity defendants only for injunctive relief." *Brown v Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Bell's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. Personal involvement by defendant state officers is not required in a plaintiff's official capacity claim for injunctive relief; all that is required is that the defendant officers, "by virtue of [their] office[s], ha[ve] some connection" with the unconstitutional policy in question. *See Ex parte Young*, 209 U.S. 123, 157 (1908).

1.    **First Amendment Retaliation**

In order for a plaintiff to allege a First Amendment retaliation claim, he must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "The filing of a prison grievance, like the filing of an inmate lawsuit, is

protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v Brown*, 38 F.3d 379, 379 (8th Cir. 1994)).

Here, Bell claims that all Defendants retaliated against him for filing his previous lawsuits and later grievances. Doc. 7 at 12. He specifically alleges that Defendants denied him his inhaler during an asthma attack, housed him with an inmate known to suffer from mental illness, refused to make copies of his commutation request and religious paperwork, refused to allow him to send his commutation request, denied his grievances without proper investigation, and broke his typewriter. *Id* He claims that Wasko, Pirraglia, and Bittinger allowed the unconstitutional conduct to continue. *Id* Thus, Bell's First Amendment retaliation claims against Tjeerdsma, Foley, Wasko, Reyes, Doyle, Shelburg, Sestak, Warembourg, Pirraglia, and Mertens-Jones in their individual capacities for money damages and their official capacities for injunctive and declaratory relief and Bittinger, Arop, Nurses Jane Doe #1 and #2, John Doe Officers #1 and #2, and Schneider in only their individual capacities for money damages survive § 1915A screening.

### 2.    Religious Land Use and Institutionalized Persons Act

Liberally construing Bell's amended complaint, he alleges claims under RLUIPA against Foley, Shelburg, Sestak, Tjeerdsma, Mertens-Jones, Reyes, Wasko, Doyle, Waremborg, and Pirraglia. Doc. 7 at 8, 10, 22. RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). But "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation," and Bell must show that a prison policy substantially burdens his exercise of religion. *Holt v  Hobbs*, 574 U.S. 352, 360–61 (2015) (citation modified).

To establish a prima facie case under RLUIPA, a plaintiff must show "1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." *Smith v. Allen*, 502 F.3d 1255, 1276 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011); *see also* 42 U.S.C. § 2000cc-1(a). If the plaintiff succeeds in making a prima facie showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Allen*, 502 F.3d at 1276 (citing 42 U.S.C. § 2000cc-2(b)). Here, Bell claims that Foley, Shelburg, Tjeerdsma, Reyes, Wasko, Mertens-Jones, Sestak, Doyle, Warembourg, and Pirraglia substantially burdened his religious exercise. Doc. 7 at 8, 10, 20, 22. Thus, Bell's RLUIPA claims against Foley, Shelburg, Tjeerdsma, Reyes, Wasko, Mertens-Jones, Sestak, Doyle, Warembourg, and Pirraglia in their official capacities for injunctive and declaratory relief survive § 1915A screening.

The District of South Dakota in *Counts v. Wasko*, 2024 WL 2784071 (D.S.D. May 30, 2024), held that "a RLUIPA claim against state officials in their individual capacities is not cognizable[.]" 2024 WL 2784071, at *4 (collecting cases holding that RLUIPA does not permit individual capacity claims for money damages). Further, the Eighth Circuit recognized that individual capacity claims for money damages are generally not available under RLUIPA because individual defendants generally have not consented to the conditions imposed by federal funding. *Barnett v. Short*, 129 F.4th 534, 542–43 (8th Cir. 2025). Bell has not alleged that Defendants in their individual capacities consented to conditions imposed by federal funding or that their employment somehow amounts to consent. *Id.* Thus, Bell's RLUIPA claims against Foley, Shelburg, Tjeerdsma, Reyes, Wasko, Mertens-Jones, Sestak, Doyle, Warembourg, and Pirraglia in their individual capacities for money damages are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1–2).

### 3.    First Amendment Free Exercise   .

Liberally construing Bell's complaint, he alleges that Foley, Shelburg, Tjeerdsma, Reyes, Wasko, Mertens-Jones, Sestak, Doyle, Warembourg, and Pirraglia violated his First Amendment right to free exercise. Doc. 7 at 8, 10, 20, 22. The First Amendment states in relevant part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. To state a First Amendment free exercise claim, Bell must allege sufficient facts to show that prison officials have substantially burned his ability to freely exercise his religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). In order to meet the substantial burden requirement, the prison regulation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.

*Murphy v  Mo. Dep't of Corr* , 372 F.3d 979, 988 (8th Cir. 2004) (citation modified).

Here, Bell has alleged sufficient facts to state a claim for violation of his First Amendment right. He alleges that Defendants Foley, Shelburg, Tjeerdsma, Reyes, Wasko, Mertens-Jones, Sestak, Doyle, Warembourg, and Pirraglia's actions constrained his ability to engage in activities that are fundamental to his religion. Doc. 7 at 8, 10, 20, 22. Thus, Bell's First Amendment free exercise claims against Foley, Shelburg, Tjeerdsma, Reyes, Wasko, Mertens-Jones, Sestak, Doyle, Warembourg, and Pirraglia in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening.

####    4.    First Amendment Right to Send and Receive Mail

The Eighth Circuit has recognized that inmates retain a First Amendment right to "send

and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994) (citations omitted).

The Eighth Circuit applied a four-factor test to prison mail regulations:

> (1) whether there is a valid rational connection between the regulation and the
> legitimate government interest it purports to further; (2) whether the inmate has an
> alternative means of exercising his constitutional right; (3) the impact that
> accommodation of the inmate's right would have upon others, including inmates as
> well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Turner v Safley*, 482 U.S. 78, 89 (1987). *Turner*'s standard applies to both incoming and

outgoing mail. *Thongvanh*, 17 F.3d at 259 (citing *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir.

1993)).

Here, Bell claims that Tjeerdsma, Sestak, Reyes, and Shelburg did not allow him to send

mail to the Governor of South Dakota to request a commutation of sentence. Doc. 7 at 9, 11. Bell

claims that Wasko and Reyes allowed their employees to violate his right to send mail. *Id* Doyle

denied Bell's grievance and did not assist him in mailing his request. *Id.* Warembourg did not

allow Bell to receive books that came in the mail for him, and Wasko, Pirraglia, Reyes, and

Foley allowed the breach to occur and failed to intervene. *Id* at 19–23. Thus, Bell's First

Amendment right to send and receive mail claims against Tjeerdsma, Sestak, Reyes, Shelburg,

Wasko, Doyle, Warembourg, Pirraglia, and Foley in their individual capacities for money

damages and their official capacities for injunctive and declaratory relief survive § 1915A

screening.

####    5.    Commutation of Sentence Claims

Bell claims that Tjeerdsma, Reyes, Shelburg, Sestak, Wasko, and Doyle violated his First

Amendment rights to petition the government for redress of grievances, free speech, and freedom

of press because they did not permit him to mail his request for commutation of sentence to the Governor of South Dakota. Doc. 7 at 9, 11. Bell also sues Tjeerdsma, Shelburg, Sestak, and Reyes for violation of his right under the Fourteenth Amendment due process clause for not mailing his commutation of sentence. *Id* at 16.

In *Otey v Hopkins*, a petitioner filed a writ of habeas corpus under 28 U.S.C. § 2254 because the state board of pardons denied his request for commutation of sentence; the Eighth Circuit affirmed the district court's denial of the petition because the court did not have subject matter jurisdiction to consider the claims under § 2254. 5 F.3d 1125, 1126 (8th Cir. 1993). Although the court lacked subject matter jurisdiction to ultimately consider the § 2254 petition, the Eighth Circuit noted that the district court's decision was "thoughtful and well-reasoned." *Id* at 1130. The district court had stated that

> The opportunity for clemency has never, so far as I can tell, been held to be a fundamental right. The right to petition the government, as such, is a fundamental right, but it is a right for a redress of grievances, whereas a clemency hearing is not a petition for redress of grievances, but a request for mercy.

*Id.* (citation omitted). In *Hains v. Peters*, the United States District Court for the Northern District of Illinois applied *Otey* to recommend that a plaintiff's First Amendment claim for violation of his right to petition the government for clemency survived review under § 1915. 1995 U.S. Dist. LEXIS 16082, at *8–12 (N.D. Ill. Oct. 27, 1995).

Here, Bell claims that Defendants have interfered with his ability to petition the government for redress by denying him his ability to submit a request for sentence commutation. Doc. 7 at 9, 11. Because this Court cannot determine that Bell's claim is wholly without merit, his First Amendment claims for right to petition the government against Tjeerdsma, Reyes, Shelburg, Sestak, Wasko, and Doyle in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening. To the extent

that Bell's amended complaint alleges any further freedom of speech or press claims related to his request for commutation of sentence that have not been identified, they are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citation modified)). "A liberty interest protictible under the due process clause of the fourteenth amendment 'may arise from two sources-the Due Process Clause itself and the laws of the States.'" *Mahfouz v. Lockhart*, 826 F.2d 791, 792 (8th Cir. 1987) (per curiam) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). "Once a liberty interest is established, the next question is what process is due." *Smith*, 954 F.3d at 1079 (quoting *Williams v. Norris*, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)).

Courts have recognized that clemency statutes can confer the right to *seek* commutation, even though the plaintiff may not have a right to *receive* a commutation of sentence. *Conn Bd of Pardons v. Dumschat*, 452 U.S. 458, 467 (1981); *Otey v Stenberg*, 34 F.3d 635, 637 (8th Cir. 1994); *Joubert v Neb. Bd. of Pardons*, 87 F.3d 966, 968–69 (8th Cir. 1996). The Eighth Circuit has held that "if the state actively interferes with a prisoner's access to the very system that it has itself established for considering clemency petitions, due process is violated." *Noel v. Norris*, 336 F.3d 648, 649 (8th Cir. 2003) (per curiam). Bell claims that Tjeerdsma, Shelburg, Sestak, and Reyes interfered with the process to seek clemency. Doc. 7 at 16. Because this Court cannot determine at this stage that Bell's claims are wholly without merit, Bell's Fourteenth Amendment clemency due process clause claims against Tjeerdsma, Shelburg, Sestak, and Reyes

19

in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening.

### 6.    Fourteenth Amendment Due Process

Bell alleges a Fourteenth Amendment due process claim because Doyle would not allow his grievances to proceed. Doc. 7 at 16. He also claims that Wasko created a system to reject grievances before they are appealed to her and to only allow certain grievances to be appealed to her. *Id.* "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting *Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N.D. Ill. 1982)); *see also Lomholt v Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam). Thus, Bell's Fourteenth Amendment due process claim about the grievance procedure is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

Bell also alleges a due process claim against Wasko, Pirraglia, and Reyes because his two padlocks were taken without just compensation because they were forbidden under the MDSP's rules. Doc. 7 at 18. The Fourteenth Amendment protects against deprivation of a protected property interest without due process of law. U.S. Const. amend. XIV, § 1. An intentional deprivation of property does not violate the due process clause if there is an adequate post-deprivation remedy. *Hudson v Palmer*, 468 U.S. 517, 533 (1984). A post-deprivation remedy does not satisfy due process requirements if the property deprivation was effected pursuant to an established state procedure. *Id* at 532 (citing *Logan v Zimmerman Brush Co* , 455 U.S. 422

(1982)). "Because the property was contraband, [a prisoner] cannot seriously argue that he had a protected property interest in it." *Lyon v Farrier*, 730 F.2d 525, 527 (8th Cir. 1984). Bell clearly alleges that the padlocks are forbidden under MDSP rules, and thus, were contraband. Doc. 7 at 18. Thus, Bell's Fourteenth Amendment due process claim against Wasko, Pirraglia, and Reyes for confiscation of his padlocks are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### 7.    Eighth Amendment Deliberate Indifference to Serious Medical Needs

Bell alleges Eighth Amendment claims for deliberate indifference to serious medical needs against Jane Doe Nurses #1 and #2, John Doe Correctional Officers #1 and #2, Arop, Wasko, Bittinger, and Pirraglia. Doc. 7 at 13–14. "[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Est. of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*,

114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he or she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Spruce v Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) ("[C]onstructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference . . . .").

Bell claims that Jane Doe Nurses #1 and #2, John Doe Correctional Officers #1 and #2, and Arop failed to provide him with his inhaler when he was suffering from asthma attacks. Doc. 7 at 14. Bell also claims that Wasko, Bittinger, and Pirraglia are responsible due to their failure to supervise their staff. *Id* Thus, Bell's Eighth Amendment deliberate indifference to serious medical needs claims against Jane Doe Nurses #1 and #2, John Doe Correctional Officers #1 and #2, Arop, and Bittinger in only their individual capacities for money damages and Wasko and Pirraglia in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening.

### 8.    Eighth Amendment Deliberate Indifference to Conditions of Confinement

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer*, 511 U.S. at 832). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal

civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (citation and internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to inmate health or safety. *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. *See id.*; *see also Tyler v Black*, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

Bell alleges Eighth Amendment conditions of confinement claims against Schneider, Wasko, Bittinger, and Pirraglia. Doc. 7 at 14. Bell sues Schneider because he housed him with an inmate who suffered from mental illness. *Id* Although Bell generally claims that he was housed with an inmate who was known to suffer from mental illness and that an altercation occurred, he has not alleged that any threat to his health or safety occurred from the housing assignment or that the conditions that were sufficiently serious to deprive him of life's necessities. Thus, he has not alleged conditions that arise to the level of an Eighth Amendment violation. Although Bell claims that Wasko, Bittinger, and Pirraglia allowed the activity to occur through their failure to supervise, he has not alleged conditions that rise to the level of an Eighth Amendment violation.

Thus, Bell's Eighth Amendment conditions of confinement claims against Schneider, Wasko, Bittinger, and Pirraglia are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### 9.    Ninth Amendment

Bell alleges several claims for violation of his rights under the Ninth Amendment. Doc. 7 at 8, 12, 13, 14, 16. The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. "[T]he Ninth Amendment does not create substantive rights beyond those conferred by governing law[.]" *Gaslin v Fassler*, 377 F. App'x 579, 579 (8th Cir. 2010) (per curiam). Thus, Bell's Ninth Amendment claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### 10.    Fourteenth Amendment Equal Protection

Bell sues Tjeerdsma, Shelburg, Sestak, Reyes, Doyle, Wasko, Bittinger, Schenider, Arop, Nurses Jane Doe #1 and #2, Officers John Doe #1 and #2, and Pirraglia for violation of his Fourteenth Amendment right to equal protection. Doc. 7 at 15, 27. The equal protection clause of the Fourteenth Amendment requires that the government "treat similarly situated people alike," a protection that applies to prisoners. *Murphy*, 372 F.3d at 984 (quoting *Rouse v. Benton*, 193 F.3d 936, 942 (8th Cir. 1999)).

To show an equal protection violation, Bell must show: (1) he is treated differently than a similarly situated class of inmates, (2) the different treatment burdens a fundamental right or is based on a suspect classification, and (3) there is no rational relation between the different treatment and any legitimate penal interest. *Id.* (citing *Weiler v Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)); *Patel*, 515 F.3d at 815 (citing *Weems v Little Rock Police Dep't*, 453

24

F.3d 1010, 1016 (8th Cir. 2006)). A plaintiff must first demonstrate that he was treated "differently than others who were similarly situated to h[im]." *Klinger v. Dep't of Corr* , 31 F.3d 727, 731 (8th Cir. 1994); *see also In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018) ("[d]issimilar treatment of dissimilarly situated persons does not violate equal protection" (alteration in original) (quoting *Klinger*, 31 F.3d at 731)). An equal protection violation also requires "an intent to discriminate." *In re Kemp*, 894 F.3d at 910.

Religion is a suspect classification; an equal protection claim based on religion requires that the inmate show that he was "denied a reasonable opportunity to pursue [his] faith compared to inmates of other religions[.]" *Runningbird v. Weber*, 198 F. App'x 576, 578 (8th Cir. 2006). Here, Bell alleges that his requests for copies for the Buddhist Group services were denied, but he does not allege that copies of religious papers were provided to other religious groups. Doc. 7 at 8, 10. Thus, he has not alleged different treatment based on his religion.

An equal protection claim has been recognized through a "class of one" where a "plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Eighth Circuit applied a class of one analysis in the prison setting to an inmate's allegations of discrimination because the parole board denied him parole but granted parole to similarly situated inmates. *Nolan v Thompson*, 521 F.3d 983, 989 (8th Cir. 2008). In *Nolan*, the Eighth Circuit held that "[a] class-of-one plaintiff must therefore 'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Id* at 990 (quoting *Jennings v City of Stillwater*, 383 F.3d 1199, 1214-15 (10th Cir. 2004)).

Here, Bell claims that Defendants denied him equal treatment because they did not allow him to send his request for commutation of sentence but did allow other inmates to mail their requests. Doc. 7 at 15. He also claims that Defendants treated him differently because they housed Bell with an inmate who was known to suffer from mental illness and because Defendants failed to provide him with his inhaler and glasses. Doc. 7 at 15. However, his conclusory claims of different treatment are insufficient to state a claim because he has not provided a specific and detailed account of different treatment.

Bell attached to his amended complaint an affidavit signed by Bell's cellmate identifying that Bell had two books from a books to prisoners program rejected, but the cellmate had received seven books in the two month-period before the amended complaint was filed. Doc. 8 at 2. The affidavit identifies that it was known that Bell filed grievances. *Id* Bell has not alleged that his cellmate has not filed grievances or lawsuits, nor has he alleged any facts to show that his cellmate was similarly situated. Thus, Bell has failed to state an equal protection claim based on different treatment because he exercised his First Amendment fundamental rights.

Bell also claims that Defendants did not provide inmates with tax forms at MDSP despite inmates at SDSP being provided tax forms. Doc. 7 at 27. However, Bell does not identify any constitutional provision or law of the United States showing that he is entitled to receive blank tax forms from the prison. *See Sinkovitz v Cook*, 2018 WL 1522078, at *3 (S.D. Ohio Mar. 28, 2018), *R&R adopted by* 2018 WL 1942383 (S.D. Ohio Apr. 25, 2018). Bell alleges that Sestak told him that "[t]he IRS does not send out forms so offenders can write them[,]" but Bell does not allege that he took any steps to request forms or that the prison prevented him from requesting blank forms from the Internal Revenue Service or other sources. Further, Bell has not alleged sufficient facts to show that inmates at MDSP are similarly situated to inmates at SDSP.

*See Klinger*, 31 F.3d at 732 (identifying that alleging differences in programs or services for inmates at different prisons may be insufficient to show an equal protection claim); *Branson v. Piper*, 2022 WL 302610, at *1 (8th Cir. Feb. 2, 2022) (per curiam) (citation omitted). Thus, Bell's Fourteenth Amendment equal protection claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### 11.   Conspiracy

Bell alleges a claim for conspiracy under § 1983 against Tjeerdsma, Shelburg, Sestak, Mergens-Jones, Reyes, Foley, Wasko, Pirraglia, Doyle, and Warembourg. Doc. 7 at 24. A § 1983 conspiracy claim requires that the plaintiff show "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v Schenck*, 700 F.3d 340, 360–61 (8th Cir. 2012) (quoting *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig* , 113 F.3d 1484, 1498 (8th Cir. 1997)). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White v McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). Although a plaintiff can use circumstantial evidence to show a conspiracy, a plaintiff bringing a § 1983 conspiracy claim must allege "specific facts tending to show" that the defendants reached an agreement to deprive the plaintiff of a constitutional right or a meeting of the minds. *See Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010).

Bell claims that he has had his "name and reputation slandered by defendants and inmate minions in a conspiracy against rights." Doc. 7 at 11. He claims that Defendants conspired to not send his request for commutation of sentence, not provide copies of religious materials, reject

grievances without proper investigations reject donated books, refused to allow him to get

affidavits from prisoners, slandered his name, destroyed electric typewriter, housed him with an

inmate known to suffer from mental illness, refused to provide his asthma inhaler, and placed

him in the SHU without a writeup. *Id.* at 24. Although Bell claims there was a conspiracy to

violate his rights, he has not alleged specific facts tending to show that Defendants reached an

agreement or a meeting of the minds. *See id.* Thus, Bell's § 1983 conspiracy claim is dismissed

without prejudice under 28 U.S.C. § 1915A(b)(1).

 Bell claims that Tjeerdsma, Foley, Wasko, Reyes, Mertens-Jones, Doyle, Bittinger, Arop,

Jane Doe Nurses #1 and #2, John Doe Officers #1 and #2, Schneider, Shelburg, Sestak,

Warembourg, and Pirraglia conspired to deprive him of his civil rights under 42 U.S.C.

§ 1985(3). Doc. 7 at 25. To allege a civil conspiracy claim under § 1985(3), Bell must show:

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was
> to deprive her either directly or indirectly of her civil rights; (3) that a conspirator
> did an act in furtherance of the object of the conspiracy; and (4) damages, shown
> by demonstrating either injury to person or property or the deprivation of a civil
> right.

*Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). "In order to state a claim for

conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate

with material facts that the defendants reached an agreement.'" *Kelly v. City of Omaha*, 813 F.3d

1070, 1077–78 (8th Cir. 2016) (quoting *City of Omaha Emps. Betterment Ass'n v. City of

Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)).

 Here, Bell does not appear to clearly allege that Defendants engaged in a civil conspiracy.

Doc. 7 at 25. He generally alleges that they conspired, but he has not alleged any facts showing a

meeting of the mind or an agreement. *Id.* Even if Bell had sufficiently alleged the existence of a

conspiracy, he has failed to state a claim. In order to state a claim under § 1985(3), "there must

be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Although Bell identifies throughout his amended complaint that Defendants have interfered with his religion, he has not alleged that such actions were motivated by discriminatory animus because of his religion. *See generally* Doc. 7. Thus, Bell's § 1985(3) conspiracy claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

Bell sues Tjeerdsma, Foley, Wasko, Reyes, Mertens-Jones, Doyle, Bittinger, Arop, Jane Doe Nurses #1 and #2, John Doe Officers #1 and #2, Schneider, Shelburg, Sestak, Warembourg, and Pirraglia under 42 U.S.C. § 1986 because they neglected to protect him from a conspiracy. Doc. 7 at 26. However, § 1986 claims "are dependent upon a valid § 1985 claim." *Jensen v. Henderson*, 315 F.3d 854, 863 (8th Cir. 2002) (citing *Lewellen v. Raff*, 843 F.2d 1103, 1116 (8th Cir. 1988)). Because Bell has failed to state a § 1985 claim that survived screening, his § 1986 claim is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### 12.    Breach of Settlement Agreements

Bell alleges claims for breach of the settlement agreements entered into in his prior two cases. Doc. 7 at 15, 17, 19–21, 23. Settlement agreements are contracts, which are governed by state contract law. *Lewis v  Benjamine Moore & Co* , 574 N.W.3d 887, 889 (S.D. 1998). Under 28 U.S.C. § 1367(a), this court has supplemental jurisdiction over all other claims that "form part of the same case or controversy" as the civil action over which this court has original jurisdiction. Thus, this Court has jurisdiction over Bell's breach of contract claim.[4]

---

[4] In Bell's prior cases, this Court incorporated by reference the parties' respective settlement agreement and retained jurisdiction to enforce the terms of the agreement. *Bell v Young*, 4:16-CV-04046-VLD Doc. 141; *Bell v Young*, 4:21-CV-04134-LLP Doc. 84.

Under South Dakota law, "[t]he elements of a breach of contract are (1) an enforceable promise; (2) a breach of the promise; and, (3) resulting damages." *Bowes Constr., Inc. v. S.D. Dep't of Transp.*, 793 N.W.2d 36, 43 (S.D. 2010) (citation omitted). Bell claims that Defendants violated the settlement agreement because they rejected two books that were donated by a Books to Prisoners program from Left Bank Books. Doc. 7 at 19. He also claims that Defendants violated the settlement agreement and rejected a store catalogue and three books donated by the National Buddhist Prison Sangha from the Zen Mountain Monastery. *Id.* at 20. Bell also alleges that Defendants engaged in conduct in retaliation for him filing his two prior lawsuits, which breached the retaliation provisions in the settlement agreements. *Id.* at 15, 17, 21, 23. Thus, his breach of contract claims for violating the settlement agreements survive § 1915A screening.

## REQUEST TO SUPPLEMENT

Bell mailed a request to update this Court about how Defendants continue to breach the settlement contract. Doc. 10. He alleges that the breach of contract continues to occur after he filed his amended complaint. *Id.* at 1–2. Amended pleadings "relate to matters that occurred prior to the filing of the original pleading[,]" but supplemental pleadings "deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." 6A Wright & Miller's Federal Practice & Procedure § 1504 (3d ed. 2025). A court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). But this Court's local rules require that "any party moving to amend or supplement a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." D.S.D. Civ. LR. 15.1.

Bell has not complied with this Court's Local Rules in filing his request to supplement. Thus, his request to supplement, Doc. 10, is denied.

### NOTICE OF RULE 4(m)

Because Bell paid his full filing fee and did not move for leave to proceed in forma pauperis, this Court is not obligated to "issue and serve all process" under 28 U.S.C. § 1915(d). Bell must arrange for service of process on the Defendants. Federal Rule of Civil Procedure 4(m) states in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Bell is on notice of this Court's intention to dismiss his claims without prejudice if he does not serve each Defendant by **ninety days from the date of this Court's screening order**, pursuant to Rule 4(m), unless he can show good cause for his failure to serve the respective Defendant.

### CONCLUSION

Accordingly, it is ORDERED

1. That Bell's claims against all Defendants in their official capacities for money damages are dismissed with prejudice under 28 U.S.C. § 1915A(b)(2).

2. That Bell's claims for injunctive and declaratory relief against SDSP employees Bittinger, Arop, Nurse Jane Doe #1, Nurse Jane Doe #2, John Doe Officer #1, John Doe Officer #2, and Schneider are dismissed without prejudice as moot under 28 U.S.C. § 1915A(b)(1).

3. That Bell's First Amendment retaliation claims against Tjeerdsma, Foley, Wasko, Reyes, Doyle, Shelburg, Sestak, Warembourg, Pirraglia, and Mertens-Jones in their

individual capacities for money damages and their official capacities for injunctive and declaratory relief and Bittinger, Arop, Nurses Jane Doe #1 and #2, John Doe Officers #1 and #2, and Schneider in only their individual capacities for money damages survive § 1915A screening.

4.      That Bell's RLUIPA claims against Foley, Shelburg, Tjeerdsma, Reyes, Wasko, Mertens-Jones, Sestak, Doyle, Warembourg, and Pirraglia in their official capacities for injunctive and declaratory relief survive § 1915A screening.

5.      That Bell's RLUIPA claims against Foley, Shelburg, Tjeerdsma, Reyes, Wasko, Mertens-Jones, Sestak, Doyle, Warembourg, and Pirraglia in their individual capacities for money damages are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1–2).

6.      That Bell's First Amendment free exercise claims against Foley, Shelburg, Tjeerdsma, Reyes, Wasko, Mertens-Jones, Sestak, Doyle, Warembourg, and Pirraglia in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening.

7.      That Bell's First Amendment right to send and receive mail claims against Tjeerdsma, Sestak, Reyes, Shelburg, Wasko, Doyle, Warembourg, Pirraglia, and Foley in their individual capacities for money damages and their official capacities for injunctive and declaratory relief survive § 1915A screening.

8.      That Bell's First Amendment claims for right to petition the government against Tjeerdsma, Reyes, Shelburg, Sestak, Wasko, and Doyle in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening. Any other First Amendment claims Bell alleges related

32

to his request for clemency are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

9. That Bell's Fourteenth Amendment clemency due process claims against Tjeerdsma, Shelburg, Sestak, and Reyes in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening.

10. That Bell's Fourteenth Amendment due process claim about the grievance procedure is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

11. That Bell's Fourteenth Amendment due process deprivation of property claim against Wasko, Pirraglia, and Reyes is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

12. That Bell's Eighth Amendment deliberate indifference to serious medical needs claims against Jane Doe Nurses #1 and #2, John Doe Correctional Officers #1 and #2, Arop, and Bittinger in only their individual capacities for money damages and Wasko and Pirraglia in their individual capacities for money damages and official capacities for injunctive and declaratory relief survive § 1915A screening.

13. That Bell's Eighth Amendment conditions of confinement claims against Schneider, Wasko, Bittinger, and Pirraglia are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

14. That Bell's Ninth Amendment claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

15. That Bell's Fourteenth Amendment equal protection claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

16. That Bell's § 1983 conspiracy claim is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

17. That Bell's § 1985(3) conspiracy claim is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

18. That Bell's § 1986 claim is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

19. That Bell's breach of contract claims for violating the settlement agreements survive § 1915A screening.

20. That Bell's request to supplement, Doc. 10, is denied.

21. That Bell is on notice of this Court's intention to dismiss his claim without prejudice if he does not serve each Defendant by **ninety days from this Court's screening order**, pursuant to Rule 4(m), unless he can show good cause for his failure to serve the respective Defendant.

22. That the Clerk of Court shall send Bell seventeen blank summons forms so that he may arrange for his own service of process on Defendants.

23. That Defendants will serve and file an answer or responsive pleading to the amended complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

24.     That Bell will keep the Court informed of his current address at all times. All parties

are bound by the Federal Rules of Civil Procedure and by the Court's Civil Local

Rules while this case is pending.

DATED June **16**, 2025.

BY THE COURT:

Lawrence L. Piersol
United States District Judge